UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC EUGENE FULLER,

        Petitioner,

v.                                                    Case No. 3:21-cv-163-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## **ORDER**

### I. Status

Petitioner Eric Eugene Fuller, an inmate of the Florida penal system, initiated this action on February 12, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Fuller challenges a 2014 state court (Duval County, Florida) judgment of conviction for second-degree murder. He raises four grounds for relief. See Petition at 10–29. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 12). They also submitted exhibits. See Docs.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

12-1 through 12-9. Fuller filed a brief in reply. See Reply (Doc. 13). This action is ripe for review.

## II. Relevant Procedural History

On February 22, 2013, the State of Florida charged Fuller by information with second-degree murder. Doc. 12-1 at 27. On July 11, 2014, following a trial, a jury found Fuller guilty with the special finding that he actually possessed and discharged a firearm causing great bodily harm or death during the commission of the offense. Id. at 83–84. On August 11, 2014, the trial court sentenced Fuller to a forty-year term of imprisonment. Id. at 225–31.

On direct appeal, Fuller, with the benefit of counsel, filed an initial brief, arguing the trial court erred when it: (1) denied the defense's motion for judgment of acquittal based on the State's failure to produce evidence of the requisite state of mind for second-degree murder—ill will, spite, hatred, or evil intent; (2) denied the defense's motion for judgment of acquittal based on the State's failure to prove that Fuller did not act in self-defense; and (3) instructed the jury that Fuller could not be engaged in illegal activity to claim self-defense. Doc. 12-3 at 2–33. The State filed an answer brief. Doc. 12-4 at 2–33. The First DCA per curiam affirmed Fuller's conviction and

sentence without a written opinion on October 9, 2015, Doc. 12-5 at 4, and issued the mandate on October 27, 2015, id. at 3.

On April 11, 2016, Fuller filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 12-6 at 2–31. In his Rule 3.850 Motion, Fuller alleged counsel was ineffective when he failed to: consult with Fuller before waiving the lesser included offense of manslaughter (ground one); object to the prosecutor's comments during closing arguments (ground two); retain an expert witness and properly cross-examine the State's witnesses (ground three); and file a sufficient motion for new trial (ground four). Id. On February 18, 2020, the postconviction court summarily denied relief on all grounds. Doc. 12-7 at 2–14. The First DCA per curiam affirmed the denial of relief without a written opinion on December 23, 2020, Doc. 12-9 at 3, and issued the mandate on January 20, 2021, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Fuller's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v.

4

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It

5

> should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

6

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the

7

state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest

court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

> In addressing exhaustion, the United States Supreme Court explained:

> > Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365–366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

> A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant

13

> of a fair trial, a trial whose result is reliable." <u>Id.</u>, at
> 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d

1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed." <u>Strickland</u>, 466

U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." <u>Richter</u>, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." <u>Id.</u> (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the <u>Strickland</u> standard was

14

> incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Fuller alleges counsel was ineffective when he waived the lesser included offense of manslaughter during his closing argument. Petition at 10. The trial court instructed the jury on manslaughter; nevertheless, counsel conceded during closing argument that the incident did

15

not constitute manslaughter. Id. at 10, 12. Fuller contends that counsel never conferred with him about waiving the lesser included offense or pursuing an "all or nothing approach." Id. at 10. He argues that "such a strategy took away the jury's pardoning power." Id. at 13.

Fuller raised a substantially similar claim as ground one of his Rule 3.850 motion.[6] Doc. 12-6 at 11–19. The postconviction court denied relief, stating in pertinent part:

> In his first ground Defendant asserts counsel rendered ineffective assistance by waiving the possibility of a conviction of the lesser included offense of manslaughter in closing argument, without consulting Defendant or obtaining his authorization. Defendant asserts that he did not know trial counsel "intended to take an[] 'all-or-nothing' approach," and that, had he known, he would have disavowed such a strategy and insisted on the manslaughter instruction." In fact, the jury was instructed on the lesser included offense of manslaughter. As the State pointed out in its response, Defendant's assertion that he was unaware of counsel's intentions until closing argument is refuted by the record, where in opening statement, trial counsel urged the jury to find Defendant not guilty because his was "a lawful justifiable act and that he was in a position where he lawfully defended himself." Defendant then testified that he shot the victim in self-defense. As the Court

---

[6] Fuller also raised Ground One, Subclaim A, in his Rule 3.850 Motion, alleging counsel was ineffective when he failed to request a jury instruction on "the culpable negligence aspect of manslaughter." Doc. 12-6 at 18. However, he has failed to assert that claim in his federal Petition.

> instructed the jury, "[t]he defendant cannot be guilty of manslaughter by committing a merely negligent act or if the killing was either justifiable or excusable homicide." Therefore, for his attorney to have argued other than for acquittal would have meant asking the jury not to believe Defendant.

Doc. 12-7 at 2–3 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Fuller is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Throughout trial, counsel argued that Fuller shot the victim, Carlton Hardaman, in self-

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

defense. Doc. 12-2 at 33, 38, 604, 619–20. Fuller testified consistently with this defense when he averred that Hardaman "put [him] in fear for [his] life." Id. at 282. Notably, the jury instructions provided that "[t]he defendant cannot be guilty of manslaughter by committing a merely negligent act or if the killing was either justifiable or excusable homicide." Doc. 12-1 at 93. Based on the above, a strategy in which counsel argued both self-defense and manslaughter could have confused the jury and undermined Fuller's credibility. Counsel reasonably could have believed that the defense should assert only self-defense. Therefore, the Court finds that counsel was not deficient when he conceded the lesser included offense of manslaughter.

Even assuming arguendo deficient performance by counsel, Fuller has not shown any resulting prejudice. Underlying Fuller's claim of prejudice is the idea that the jury would have found him guilty of manslaughter had counsel not waived the argument for the lesser included offense. This argument ignores the fact that the jury found that the state proved each element of second-degree murder, see Doc. 12-1 at 83; therefore, Fuller's prejudice allegation relies solely on the possibility of a jury pardon. The possibility of a jury pardon, however, cannot establish prejudice under Strickland. See Strickland, 466 U.S. at 694–95 (noting in determining

whether prejudice exists, a court should presume the "jury acted according to law," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed."); see also Sanders v. State, 946 So. 2d 953, 959–60 (Fla. 2006) (holding that although the failure to instruct the jury on a necessarily lesser included offense can be per se reversible error on direct appeal, the mere possibility that the jury might have exercised its pardon power "cannot form the basis for a finding of prejudice" to support an ineffective assistance of counsel claim in a postconviction motion). As Fuller demonstrates neither deficiency nor prejudice, his claim of ineffective assistance of counsel fails. Accordingly, he is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

In Ground Two, Fuller argues that counsel was ineffective when he failed to object to the prosecutor's comments during closing arguments. Petition at 16. He contends that the prosecutor commented on facts not in evidence, misstated the law, and personally attacked him. Id. at 16–18.

19

### 1. Facts Not in Evidence

Fuller contends that counsel was ineffective when he failed to object to the prosecutor's comments on facts not in evidence. See id. at 16. According to Fuller, the prosecutor made the following assertions during closing argument: (1) Lieutenant Silcox testified, "He [Fuller] didn't come out [of the vehicle] on his own. I had to pull him out."; (2) Fuller "was a little weary [sic] when Mr. Hardaman got in the car" so Fuller put a gun in his lap; (3) Fuller stated on the day of the murder, "[S]omeone's going to get it tonight."; and (4) Fuller slammed Hardaman's head into the dashboard after Fuller shot him. Id. at 16–18. He argues that the facts in evidence did not support these assertions. Id.

Fuller raised substantially similar claims in ground two of his Rule 3.850 Motion. Doc. 12-6 at 20–22. The postconviction court denied relief, stating in pertinent part:

> The first instance was the prosecutor's remark, "He didn't come out on his own. I had to pull him[,][]" which was a characterization of Lieutenant Silcox's testimony about removing Defendant from the car where he was found. Defendant asserts that the prosecutor's statement was "not supported by the evidence and should have garnered an objection." Lieutenant Silcox described his arrival on the scene where Defendant was found sitting in the driver's seat of a car, and testified:

I instructed him to move his left hand over because we couldn't get the driver's side door the way the vehicle was wedged into the woods. And instead of reaching his left hand over, he reached his right hand over. And I grabbed[sic] right hand and I pulled him out of the vehicle, put him on the ground and we handcuffed him.

Captain Avery, a paramedic who was first to arrive on the scene, testified when the officers were pulling Defendant out of the car, "[h]is legs were stiff. He wasn't helping them. They pulled him out." On cross examination by defense counsel, Lieutenant Silcox testified:

> Q     All right. So you and Sergeant Sutton actually pulled him out of the car together. Wouldn't that be right?
>
> A     Sergeant Sutton was standing more behind the vehicle. I pulled him out by his hand and then we handcuffed him. Sergeant Sutton come[sic] around to where I was at.
>
> Q     Okay. And in order to get him from the driver's side out of the passenger side, he would have had to go over the console of the car, right?
>
> A     I don't remember if the car had an actual console in the middle of it or not.
>
> Q     But if it did, he would have had to come over?
>
> A     He would have had to come across it, yes, sir.

21

> Q     And if there was a parking
> brake, he would have had to go over[sic]
> parking brake, as well?
>
> A     If there had been one in
> there, yes.
>
> Q     All right. And then he came
> across the passenger seat, right?
>
> A     Yes, sir.
>
> Q     He wasn't elevated. You had
> to pull him.
>
> A     No sir. I had to pull him
> across there.

This Court finds that Lieutenant Silcox's testimony
was as the State described it, and was supported by
Captain Avery's testimony. The record refutes
Defendant's assertion that the State's remarks were
not supported by evidence. There was no ground for
counsel to object, and the absence of an objection was
not deficient performance. Taylor v. State, 120 So. 3d
540, 551 (Fla. 2013) (holding defense counsel not
ineffective for failing to object to proper arguments).

. . . .

. . . Defendant argues the prosecutor mischaracterized
his testimony about why he had a gun in his lap: the
State asserted that Defendant was wary when the
victim got into the car, but Defendant testified that
he armed himself because of the area they were in.
Defendant testified that, earlier in the day, he had
talked with the victim about Defendant's expectation
of receiving a $1,000 tax refund, and that the victim
asked Defendant several times when Defendant
planned to cash the refund check, because the victim
needed some cash. Later, as Defendant drove the
victim around, the victim complained about his
money situation and "stated someone got to get it

22

tonight, like he was threatening somebody."
Sometime after that, Defendant was again driving
with the victim in the car. Defendant described
lighting a cigarette and beginning to count money
from his paycheck while stopped at a traffic signal.
He also removed a gun from under the seat and put it
in his lap while stopped at the red light. Shortly after
proceeding on the green light, the victim grabbed the
pistol Defendant had in his lap "and jammed it to
[Defendant's] head." When asked why he had a pistol
in his lap, Defendant testified, "Usually the gun be
up under the seat, but at that moment, I felt — I felt
kind of — it was — just something. It was a
weary[sic] feeling. And I had just reached up under
the seat, and I put it on my lap. In closing argument,
the prosecutor said, "He tells us yesterday, well, after
[the victim] got in the car, I was a little weary[sic].
Things just seemed out of place. And I kind of got the
sense that something was going wrong, so I put the
gun in my lap." The prosecutor's chronology was
correct—Defendant put the gun in his lap after the
victim got into the car—and his argument need not
be read to imply that the victim was the cause of
Defendant's wary feeling. The record refutes
Defendant's claim that he testified to putting the gun
in his lap because of the area they were in; he
testified to no such thing. Because the State did not
mischaracterize Defendant's testimony in its closing
argument, there was no basis for objection, and
counsel was not ineffective for failing to object.

. . . Defendant alleges that the prosecutor mistakenly
attributed the statement "someone's going to get it
tonight" to Defendant, which would have misled the
jury into believing that Defendant was out to get
someone. The prosecutor said, "And then a gun is put
to my head. And what does he tell us? Someone's
going to get it tonight. Who? What? What are you

talking about? Well, I had to do something fast so I fake a turn right." Contrary to Defendant's assertion, the State did not attribute the statement "someone's going to get it tonight" to Defendant. A more reasonable reading of the argument is that the State is recalling the testimony with Defendant as the narrator; from that perspective, the statement "someone's going to get it tonight" helps to explain why Defendant felt he had to do something fast— because he felt threatened by the victim—and executed the fake right turn. The record does not support Defendant's reading of the argument, nor his assertion that the argument likely influenced the jury to find him guilty.

. . . Defendant points to the prosecutor's "remark on facts not in evidence that was so prejudicial it cannot be said that the jury was not influenced by it." The portion of the closing argument at issue reads, "[Defendant] doesn't want us to know that after he shoots his friend, he takes his head and bashes it into the dashboard. How do we know that? Because Dr. Rao told us . . . ." Defendant's motion truncates this last sentence as indicated. At trial, the cause of injuries to the victim's forehead and eye, and the mechanism by which the victim's blood was left on the windshield, on the dashboard, and even inside the dashboard vents, were contested issues. Defendant testified that after he shot the victim, the victim's head hit the dashboard, but did not stay on the dashboard as his "body was just moving everywhere around, around the car. It was just moving and it was a dangling body." The sentence which Defendant truncated in his motion reads, in full, "Because Dr. Rao told us there's an indentation right up here, the victim's body, that matches the dashboard."

24

Dr. Rao, the medical examiner, testified at trial that the injuries to the eye and forehead bore a linear pattern, which could have been caused by hitting the dashboard of the car. She also testified that the injuries would have required significant force, as shown by the skin having been rubbed off, the bleeding under the scalp, and the internal bleeding under the eyes. On cross-examination, Dr. Rao testified that it would be possible to grab someone by the back of the neck without leaving any markings on the back of the neck. Therefore, Dr. Rao's testimony regarding: the linear pattern of the injuries; that the injuries would have required significant force, i.e., a force greater than "dangling;" and that one could have grabbed the back of the neck without leaving a mark, supports the inference the State made in closing argument, so that the argument was not objectionable.

Additional support for an inference that Defendant forcefully shoved the victim's head into the dashboard comes from the testimony of the State's bloodstain pattern analyst Karen Smith, who opined on the force necessary to deposit blood on parts of the dashboard and far into the vent holes.

Doc. 12-7 at 3–4, 6–8 (footnote and record citations omitted). The First DCA affirmed the denial of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided these claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's

adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Fuller is not entitled to relief on the basis of these claims.

Nevertheless, even if the state appellate court's adjudication of these claims is not entitled to deference, the claims are without merit because the record supports the postconviction court's conclusions. During closing argument, a prosecutor may assist the jury in "analyzing, evaluating, and applying the evidence" and, in doing so, "state his contention as to the conclusions that the jury should draw from the evidence." United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) (emphasis and citation omitted). Here, Lieutenant Phillip Silcox, in conjunction with Captain Debra Avery, provided testimony that supported the inference that law enforcement had to pull Fuller out of his vehicle. See Doc. 12-2 at 77, 82. Similarly, the prosecutor's comment about Fuller slamming Hardaman's head into the dashboard was a reasonable inference from the facts in evidence. Medical examiner Dr. Valerie Rao stated that Hardaman sustained blunt force trauma to his forehead in a linear pattern consistent with the dashboard of

26

Fuller's vehicle. Id. at 191–92. According to Dr. Rao, significant force caused the injury. Id. at 193. Blood stains on the dashboard also showed Hardaman's head impacted the dashboard with "some force." Id. at 221–22. As such, the prosecutor made proper comments based on the evidence; counsel was not deficient when he failed to raise meritless objections to these comments. See Chandler v. Moore, 240 F.3d 907, 914 (11th Cir. 2001) (finding that where the prosecutor's comment was not improper, "counsel cannot be deemed ineffective for failing to object to it.").

Fuller also alleges that the prosecutor "mischaracterized the testimony of Mr. Fuller as to why he had the gun in his lap . . . and indicated that Mr. Fuller said he was a little weary [sic] when Mr. Hardaman got in the car . . . when clearly Fuller said his reason for arming himself was due to the area they were in." Petition at 17. The record reflects Fuller testified that he reached under his seat and put a gun in his lap while he was driving with Hardaman in the vehicle because he had "a weary [sic] feeling." Doc. 12-2 at 279. Contrary to his representation in the Petition, Fuller did not testify that he armed himself "due to the area they were in." Petition at 17. The prosecutor accurately represented the facts in evidence. Therefore, counsel

27

had no basis to object to the prosecutor's comment. See Chandler, 240 F.3d at 914.

Last, Fuller contends the prosecutor misattributed the statement, "Someone is going to get it tonight," to him. Petition at 17. Having considered the comment in context, the Court finds that the prosecutor did not attribute the statement to Fuller. Doc. 12-2 at 593–94. Moreover, attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys' statements and arguments were not evidence. Id. at 577; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions"). Counsel's decision not to object was within the wide range of professionally competent assistance. Accordingly, Fuller is not entitled to federal habeas relief on these claims.

### 2. Misstatement of the Law

Fuller alleges that counsel was ineffective for failing to object when the prosecutor made a comment "contrary to the law." Petition at 17. Fuller raised a substantially similar claim in ground two of his Rule 3.850 Motion. Doc. 12-6 at 20–22. In denying relief, the postconviction court stated:

> Second, Defendant alleges that the prosecutor
> argued to the jury that the type of bullet used

28

"somehow proves the ill will, spite, evil intent, etc., element of second degree murder, contrary to the law." Defendant asserts that the argument required an objection and a curative instruction. The portion of the State's closing at issue reads:

> Let's further talk about what's imminently dangerous to another and demonstrating a depraved mind. One, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another and is done from ill will, hatred spite or evil intent and is of such a nature that the act itself indicates an indifference to human life.

> Well, how did we prove that? You took a look at this firearm, this .45 caliber semiauto gun that was used. You heard from Dr. Rao how close the bullet wound was because of the stippling on the side of the forehead, pointing a firearm of this caliber, probably any caliber for that matter, but this caliber, within inches of somebody's head and firing it, imminently dangerous. Someone that's upset, someone gets mad pulls the trigger. And you saw the results. You saw the blood all over the car. You saw the blood all over the victim. The blood is even over the firearm.

> You heard from the FDLE DNA analyst. Yeah, there's his DNA all over it. Well, of course, because of all the blood.

> So is it imminently dangerous holding this firearm in the driver seat,

pointing it at your best friend, your brother? Yeah.

And you can take a look at the bullets that were found inside the car to give you an idea of the type of bullet that went through the victim's skull, and you can decide if this was done from ill will, hatred, spite, that the act indicates an indifference to human, life shooting a bullet through Mr. Carlton's [Hardaman] head.

The prosecutor, then, did not argue merely that the type of bullet indicated ill will, spite, or evil intent, as Defendant asserts. Instead, the State, pointed to several circumstances—the kind and caliber of weapon, the firing of the weapon inches from the victim's head, the blood on the car, on the victim, and on the weapon—and argued that those circumstances support an inference that the act was imminently dangerous. The Court gave the jury a three-part definition of an act "imminently dangerous to another and demonstrating a depraved mind . . . ." One of those three parts was an act "done from ill will, hatred, spite or an evil intent[;]" another was an act "of such a nature that the act itself indicates an indifference to human life." The portion of closing argument quoted above mentions those two parts of the definition without emphasizing one over the other. The State, as it is permitted to do, argued that the evidence supported an inference that Defendant's act of shooting the victim was imminently dangerous and demonstrated a depraved mind. See Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006) (holding "an attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the

> argument is based on the evidence."). Therefore,
> there was no basis for counsel to object, and counsel
> did not perform deficiently by not doing so.

Doc. 12-7 at 5–6 (record citations omitted). The First DCA affirmed the denial

of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's

adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Fuller is not

entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this

claim is not entitled to deference, the ineffectiveness claim is without merit.

Here, the prosecutor argued that the caliber of the bullet in conjunction with

the position of the gun relative to Hardaman's head demonstrated the intent

element of second-degree murder—the act was done from ill will, hatred,

spite, or evil intent, as well as indicated an indifference to human life. Doc.

12-2 at 585–86. Fuller points to no case law that prohibits the jury from considering the caliber of the bullet as evidence of this element. See generally Petition, Reply. The Court finds that the prosecutor's remarks were proper as reasonable inferences that the jury could draw from the evidence, see Johns, 734 F.2d at 663, and counsel was not deficient when he failed to make a meritless objection to it, see Chandler, 240 F.3d at 914. Therefore, Fuller is not entitled to federal habeas relief on the basis of this claim.

### 3. Personal Attacks

Fuller next argues counsel was ineffective when he failed to object to the prosecutor's "personal attack[s]" on Fuller during rebuttal closing argument. Petition at 17–18. Fuller raised a substantially similar claim in ground two of his Rule 3.850 Motion. Doc. 12-6 at 20–22. The postconviction court denied relief, stating in pertinent part:

> Sixth, Defendant alleges that an objection and motion for mistrial were necessitated by the prosecutor's "personal attack on [his] character[,]" when the prosecutor said, "'by the defense's own logic, any one riding alone with another person- - and I would hate to ride along with Eric Fuller all by myself because guess what? He decides to murder me.'" The trial transcript actually reads, "By the defense's logic anyone riding alone with another person — and I would hate to ride along with Eric Fuller all by myself because guess what? He decides to murder me. I tried to rob him. I tried to kidnap

him." The passage at issue is from the State's rebuttal closing. It was in response to Defendant's argument that the State presented no evidence to contradict Defendant's testimony about what happened in the car before the shooting. The State's rebuttal implied that, because Defendant was the only one who survived the ride in the car, he can say what he wishes about what happened without fear of contradiction, including saying after the fact that the person he shot tried to rob and kidnap him. The State's rebuttal was a permissible comment on Defendant's credibility as a witness, and as such, was not objectionable.

Defendant's seventh and final claim regarding closing argument concerns the "numerous remarks that Fuller was a liar which also amounted to a personal belief since the record does not support such remarks." Defendant cites examples from the State's rebuttal closing ranging from page 804 through page 817 of the trial transcript.

. . . .

Each of the passages quoted above was an instance of the prosecutor, in rebuttal, pointing out perceived weaknesses or inconsistencies in Defendant's testimony and theory of the case in light of the evidence.

> When counsel refers to a witness or a defendant as being a "liar," and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the

> evidence. It was for the jury to decide
> what evidence and testimony was worthy
> of belief and the prosecutor was merely
> submitting his view of the evidence to
> them for consideration. There was no
> impropriety.

> Craig v. State, 510 So. 2d 857, 865 (Fla. 1987).
> Therefore, this Court finds no impropriety here, and
> no basis for defense counsel to have objected.

Doc. 12-7 at 8–11 (record citations omitted). The First DCA affirmed the

denial of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's

adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Fuller is not

entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this

claim is not entitled to deference, the claim is without merit. During closing

argument, counsel emphasized that the State failed to present evidence that

34

contradicted Fuller's account of the incident. Doc. 12-2 at 616, 623–24. The prosecutor's remark that he would "hate to ride along with Eric Fuller all by [him]self" was a fair response to counsel's argument. See Holland v. Florida, 775 F.3d 1294, 1318 (11th Cir. 2014) (recognizing a prosecutor is entitled to fairly respond to the arguments of defense counsel). As to the remarks about Fuller lying, each one in context properly requested the jurors to consider Fuller's credibility as a witness based on his trial testimony, his prior statements to law enforcement, and the physical evidence. Doc. 12-2 at 628, 631, 633–35, 637, 640–41. Such an argument is not improper. See United States v. Rivera, 780 F.3d 1084, 1100 (11th Cir. 2015). Considering the above, counsel was not deficient when he failed to make a meritless objection. See Chandler, 240 F.3d at 914. Accordingly, Fuller is not entitled to federal habeas relief on the claims in Ground Two.

## C. Ground Three

Next, Fuller alleges counsel was ineffective when he failed to hire "an expert on how a body could react upon death (nervous system)." Petition at 21. According to Fuller, the State argued that after shooting Hardaman, Fuller slammed Hardaman's head against the dashboard. Id. Fuller appears to contend that an expert would have testified Hardaman's head hit the

dashboard as a result of his body's involuntary movements at the time of death. See id.; Doc. 12-6 at 24. Fuller asserts the expert's purported testimony would have undermined the State's theory. Petition at 21.

Fuller also argues that counsel was ineffective when he failed to cross-examine "the State's witnesses on how the front seat (passenger-side) was placed in its most rear position." Id. at 21. According to Fuller, the State argued at trial that "since the seat was pushed all the way back in a reclining position, coupled with the blood on the seatbelt, was somehow an indication the incident didn't occur as Fuller said it did." Id. at 22. Fuller maintains law enforcement officers moved the passenger seat to remove him from the vehicle, and counsel should have cross-examined the State's witnesses about moving the seat. Id. at 21.

Fuller raised substantially similar claims in ground three of his Rule 3.850 Motion.[8] Doc. 12-6 at 22–25. The postconviction court denied relief, stating:

> At trial, the medical examiner could not say whether the trauma injuries to the eye and forehead occurred before or after the gunshot wound. She testified that the injuries to the forehead would have required great force. While Defendant asserts that an expert "likely would have dispelled any unsupported theory that Fuller bashed the victim's head into the dashboard[,]" this Court finds it rather unlikely that an additional expert witness could have shed more light on the matter. Another expert could have opined on the severity of the injury and the similarity of the pattern of the wound to the shapes of parts of the dashboard and vents, but another expert would most likely have been unable, just as the blood spatter analyst was unable, to offer an opinion on whether the victim's head hit the dashboard because of "spastic, uncontrolled" movements of his body after being shot, or because of Defendant's intentionally bashing him. Defendant's claim of prejudice is unconvincing in light of the trial testimony that significant force was required to inflict the injuries,

---

[8] Respondents contend although Fuller alleged in his Rule 3.850 Motion that counsel was ineffective when he failed to cross-examine Captain Avery about the position of the seat, he fails to identify a specific witness in the corresponding claim raised in his federal Petition. Response at 35. Therefore, they argue "the state courts failed to rule on this particular nuance to his claim and . . . Petitioner failed to exhaust his state remedies with regard to this claim . . . ." Id. In the interests of judicial economy and because the Court can dispose of the claim on the merits, the Court assumes Fuller exhausted the claim. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

and the testimony on the limits of witnesses' expertise to determine how the injuries were inflicted. It is also apparent from the record that defense counsel employed the strategy of arguing that the proper inquiry on self-defense is not what happened after the shooting, but what happened before.

Regarding the position of the seat, it was Lieutenant Silcox, not Captain Avery, who removed Defendant from the car. Therefore, further cross-examination of Captain Avery would have been fruitless. Moreover, questioning of law enforcement officers who were at the scene was not a necessary predicate to Defendant's testifying about the seat position, should he have chosen to do so. Therefore, failing to question those witnesses, did not prejudice Defendant as he claims. In fact, contrary to his position in the [Rule 3.850] Motion, Defendant twice confirmed at trial that, at the time of the shooting, the victim's seat was reclined. Defendant's third ground is without merit.

Doc. 12-7 at 12–13 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided these claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Fuller is not entitled to relief on the basis of these claims.

Even assuming the state appellate court's adjudication of these claims is not entitled to deference, the claims do not have merit. First, Fuller's allegations are facially insufficient to support a claim of ineffective assistance of counsel for failure to call an expert witness. Vague, conclusory, speculative, or unsupported claims cannot establish an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). More than mere conceivability is required to establish prejudice; the likelihood of a different result must be substantial, not just conceivable. Jenkins v. Comm., Ala. Dep't of Corr., 963 F.3d 1248, 1264 (11th Cir. 2020). The Court finds this claim is conclusory and speculative because Fuller merely alleges, without support, that an expert would have examined the facts of this case and determined Hardaman's blunt force trauma injury occurred as a result of the involuntary movements of his body upon death. Indeed, the blood stain analyst, Karen Smith, determined that while the evidence showed Hardaman's head hit the dashboard with significant force, she could not conclude whether the impact occurred as a result of the body's involuntary

39

movements or Fuller's intervention. Doc. 12-2 at 235. As such, it is entirely possible an expert could have come to the same conclusion as Smith did in this case. Accordingly, this claim is speculative and does not entitle Fuller to relief. See Tejada, 941 F.2d at 1559; Jenkins, 963 F.3d at 1264.

Even assuming counsel performed deficiently, Fuller fails to demonstrate prejudice. Although counsel did not call an expert witness, he was still able to cast doubt on the State's theory that Fuller slammed Hardaman's head into the dashboard. Blood spatter analyst Smith testified that the passenger-side dashboard of Fuller's vehicle had an impact pattern consistent with a source of blood impacting it with "some force." Doc. 12-2 at 222. She opined that the stain was consistent with Hardaman's dreadlocks hitting the dashboard. Id. Nevertheless, Smith admitted on cross-examination that she could not conclude how Hardaman's head hit the dashboard. Id. at 235. She also noted that the human body is "maneuverable" and Hardaman's body "did move around at some point." Id. at 234–35. During closing arguments, counsel stressed Smith's inability to determine what caused any of the blood stains. Id. at 623. Despite Smith's testimony on cross-examination and counsel's argument, the jury still found Fuller guilty of second-degree murder. Considering the above, no reasonable probability

exists that the outcome of the proceeding would have been different if counsel called an expert witness.

Fuller's claim about the reclined passenger seat similarly fails. Fuller relies on mere speculation, and points to no evidence in the record suggesting law enforcement officers moved the seat to remove him from the vehicle. Rather, the record reflects Fuller testified that the passenger seat was reclined when he shot Hardaman. Doc. 12-2 at 325–26. The Court does not find that counsel performed deficiently where he failed to pursue a line of cross-examination that had the potential to undermine his client's testimony. Therefore, Fuller is not entitled to federal habeas relief on the claims in Ground Three.

### D. Ground Four

As Ground Four, Fuller alleges that counsel was ineffective when he failed to file a sufficient motion for new trial. Petition at 26. According to Fuller, "counsel's boilerplate motion for a new trial was insufficient to support the relief sought, as it failed to present sufficient facts, a weight of the evidence review, and other errors that deprived Mr. Fuller the right to a fair trial." Id. He maintains that counsel should have raised the following issues: (1) the State failed to present sufficient evidence that Fuller

41

committed the murder with ill will, spite, hatred, or evil intent; (2) the State erroneously argued that "the shooting at close range, failing to call for help, and dropping the body off all establish the ill will, spite, etc., element of second degree murder"; (3) Fuller's version of the incident "went uncontradicted"; (4) the trial court failed to request that Fuller waive the lesser included offense of manslaughter on the record; (5) the prosecutor made improper comments during closing arguments; and (6) the State did not present sufficient evidence to support a prima facie case of second-degree murder. Id. at 26–29.

Fuller raised a substantially similar claim as ground three of his Rule 3.850 Motion. Doc. 12-6 at 25–29. In denying relief, the postconviction court stated in pertinent part:

> Defendant's fourth ground asserts that counsel failed to file a sufficient motion for new trial based on weight and sufficiency of the evidence. He identifies six points that he asserts counsel should have raised. The first and second points concern the State's alleged failure to prove ill will, spite, hatred, etc. That issue was raised on direct appeal; thus, failure to raise it in a motion for new trial did not prejudice Defendant. Cf. Stephens v. State, 787 So. 2d 747, 754 (Fla. 2001) (holding that a "bare bones" motion for new trial does not preserve any specific argument for appeal). Those points were also argued on the motion and renewed motion for judgment of acquittal, which this Court denied. Defendant's third point, that he

42

was the only witness to the shooting, and that his version of events was uncontradicted, is merely an example of circular reasoning, and does not state grounds for a motion for new trial. Defendant's fourth and fifth points, concerning waiver of lesser included offenses and the prosecutor's alleged mischaracterization of facts and misstatements of law, respectively, are addressed in this Court's analysis of the first and second grounds of the instant Motion. Defendant's sixth point, regarding proof of self-defense, was raised on appeal, and therefore Defendant suffered no prejudice by its omission from a motion for new trial.

Doc. 12-7 at 13 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. Doc. 12-9 at 3.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Fuller is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the ineffectiveness claim is without merit. The record demonstrates that defense counsel filed a motion for new trial, arguing that the trial court erred when it denied the defense's motions for judgment of acquittal, the verdict is contrary to the weight of the evidence, the verdict is contrary to the law, the trial court erred when it denied the defense's motion in limine, and the trial court erred when it permitted a State witness to identify Fuller on redirect examination. Doc. 12-1 at 219–20. The trial court denied the motion. Id. at 235, 258. Considering the above, Fuller has not shown that the outcome would have changed had defense counsel included the issues that he suggests, particularly given that the trial court found that the verdict was neither contrary to the weight of the evidence nor contrary to the law. See Bell v. State, 248 So. 3d 208, 209 (Fla. 1st DCA 2018) (noting that a motion for new trial "requires the trial court to weigh the evidence and determine credibility just as a juror would"). As such, Fuller is not entitled to federal habeas relief on the claim in Ground Four.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Fuller seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The

44

Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Fuller "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

45

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Fuller appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of December, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

46

Jax-9 11/9
c:    Eric Eugene Fuller, #O-J53450
      Counsel of record